OPINION
{¶ 1} Appellant Linda Campbell [hereinafter appellant] appeals from the June 9, 2003, Judgment Entry of the Court of Common Pleas of Richland County, Division of Domestic Relations, Juvenile Branch, which granted permanent custody of appellant's natural child to the Richland County Children Services Board [hereinafter RCCSB]. Appellee is RCCSB.
STATEMENT OF THE FACTS AND CASE
 {¶ 2} Appellant's natural child (d.o.b. June 6, 2001) was first removed from appellant's care and placed in the temporary custody of RCCSB in 1993. This first involvement was due to appellant's mental health problems and substance abuse.[1] That disposition was reduced to one of protective supervision by order dated February 19, 1994. Subsequently, appellant relocated her home outside of Richland County and protective supervision was terminated.
 {¶ 3} At some point, appellant and her child returned to Richland County, Ohio. In August, 1998, RCCSB was granted emergency shelter care of the child. This action was based upon an incident in which appellant and her child were at a campground. The Sheriff's Department was called when appellant had a stick and was threatening other residents of the campground. At the time, appellant's child was seven years old and was walking around in only her underpants. The child had a scratch under her left eye and scratches on the right side of her neck. The child also had dried blood in her right nostril and her hair was very dirty and tangled. Appellant denied hurting the child and believed that the other residents of the campground had hurt the child. Appellant was trying to "make restitution" for the child's injuries. Tr. at pg. 15. Appellant was arrested for intoxication and threatening other people.
 {¶ 4} By Order filed November 12, 1998, the trial court again placed the child in the temporary custody of RCCSB. The child was returned to appellant's care under an order of protective supervision in January of 1999, but in February of 2000, RCCSB was again awarded emergency shelter care of the child. In February, 2000, RCCSB received a referral that the child had been molested by three different perpetrators. At least one of the perpetrators lived in a trailer with appellant. About two weeks after the child disclosed the molestation, appellant became intoxicated, seemingly as a result of struggling with the child's disclosure. Appellant was arrested for intoxication, child endangerment and menacing.
 {¶ 5} By Magistrate's Decision filed June 27, 2000, the trial court granted temporary custody to RCCSB. Thus, the child has resided outside of appellant's home since February 24, 2000.
 {¶ 6} By Judgment Entry filed October 18, 2000, the child was placed in the legal custody of her father, Martin Walters. Walters, who resided in Florida, found himself unable to care for the child's special needs and returned her to Richland County.[2] By Magistrate's Decision filed January 29, 2002, the child was again placed in the temporary custody of RCCSB. The trial court found "it is not in [the child's] best interest that she have visitation or communication with her mother, Linda Campbell," and discontinued appellant's visitation.
 {¶ 7} On September 4, 2002, RCCSB filed a motion for permanent custody of the child. A hearing on the motion was held on February 27, 2003. At the hearing, appellant, her caseworker Teresa Alt and appellant's adult son and daughter-in-law all testified. In addition, documents from appellant's psychiatrist were admitted into evidence by agreement of all parties, as were psychological evaluations of appellant, various treatment records regarding appellant and a psychological evaluation and a progress report concerning the child. By Magistrate's Decision filed March 10, 2003, it was recommended that RCCSB be awarded permanent custody of the child. Objections were filed by appellant. However, the trial court overruled appellant's Objections and affirmed the Magistrate's Decision on June 9, 2003.
 {¶ 8} It is from the June 9, 2003, Judgment Entry that appellant appeals, raising the following assignment of error:
 {¶ 9} "THE TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 10} This case comes to us on the accelerated calendar. Appellate Rule 11.1, which governs accelerated calendar cases, provides, in pertinent part: "(E) Determination and judgment on appeal. The appeal will be determined as provided by App.R. 11. 1. It shall be sufficient compliance with App.R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form. The decision may be by judgment entry in which case it will not be published in any form." This appeal shall be considered in accordance with the aforementioned rule.
 {¶ 11} In the sole assignment of error, appellant argues that the trial court's decision is against the manifest weight of the evidence. We disagree.
 {¶ 12} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 13} Revised Code 2151.414(B)(1) addresses under what circumstances a trial court may grant permanent custody. That statute provides as follows:
 {¶ 14} _¶ 17_ "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 15} _¶ 18_ "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 16} _¶ 19_ "(b) The child is abandoned.
 {¶ 17} _¶ 20_ "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 18} _¶ 21_ "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." R.C. 2151.414(B)(1).
 {¶ 19} _¶ 22_ In the case sub judice, the trial court found that the child was not orphaned, abandoned, or in the custody of a public serves agency for twelve (12) or more months of a consecutive twenty-two month period, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents (See R.C. 2151.414(B)(1)(a)) and that it was in the best interests of the child to place the child in the permanent custody of RCCSB.
 {¶ 20} Revised Code 2151.414(E) sets out the factors relevant to determining whether children should not be placed with a parent at this time or within a reasonable time. Revised Code 2151.414(E) states the following, in pertinent part:
 {¶ 21} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 22} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 23} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code. . . ."
 {¶ 24} In this case, the trial court found that through no fault of appellant, appellant suffers from a chronic mental illness that is so severe that it makes her unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year of the hearing date. See R.C. 2151.414(E)(2). Further, the trial court found that notwithstanding reasonable case planning and diligent efforts by RCCSB and appellant to remedy the problems of mental illness and alcohol abuse that initially caused the child to be placed outside the home, the problems remain present and insurmountable. R.C. 2151.414(E)(1). The trial court found that appellant was functioning at her best but her underlying brain damage incapacitates her from being able to provide the home that Shelly needs. See Magistrate's Report, adopted by the trial court in its June 9, 2003, Judgment Entry. Upon review, we find that the trial court's findings were not against the manifest weight of the evidence. The following evidence was presented at the permanent custody hearing:
 {¶ 25} Appellant suffered a significant work related brain trauma in the past. Subsequently, she suffered another brain trauma in an automobile accident. In addition to the brain trauma injuries themselves, appellant has been diagnosed with dementia secondary to brain trauma and severe loss of intelligence, memory, and orientation secondary to the damage to her brain. In addition, although at the time of the hearing appellant was functioning better then she had in a long time, appellant has a history of treatment struggles, impulsivity and alcohol abuse problems.
 {¶ 26} Appellant's psychiatrist felt that appellant was not capable of providing appropriate care for children. He felt that appellant should not be entrusted with the care of a child. Response by Dr. Stuart Openheimer to February 18, 2003, letter from RCCSB. Dr. Openheimer stated that appellant was unable to provide an adequate, permanent home for a child and that the inability would continue for at least one year or longer, based upon his opinion that appellant suffered from chronic mental and/or chronic emotional illnesses. Id. Dr. Opemheimer made it clear that he felt even more strongly that appellant was not capable of caring for a child if that child had been diagnosed as suffering from post traumatic stress disorder, chronic, generalized anxiety disorder with separation anxiety features (provisional) and the effects of sexual abuse victimization. The evidence showed that appellant's child suffers from these disorders.
 {¶ 27} Based upon the foregoing evidence presented at the hearing, we find that the trial court's finding that the children could not be placed with appellant at that time or within a reasonable time was supported by the evidence and not against the manifest weight of the evidence.
 {¶ 28} The trial court further found that permanent custody was in the best interests of the children. In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:
 {¶ 29} "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 30} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 31} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 32} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 33} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 34} In the case sub judice, testimony showed that that the child was a special needs child, having been diagnosed as suffering from post traumatic stress disorder, generalized anxiety disorder with separation anxiety features (provisional) and attention deficit hyperactivity disorder. The child is considered developmentally delayed, both academically and socially. A psychologist who evaluated the child found that it appeared to be inappropriate to return the child to the care of her mother. The child, through the CASA/GAL (Guardian Ad Litem), expressed a desire not to return to appellant. Evidence also showed that the child did not have a meaningful, current relationship with appellant or any sibling.[3] Further, the CASA/GAL recommended that permanent custody be granted to RCCSB, finding that the child was in a safe and nurturing foster home environment and the child would like to be adopted by her present foster family.[4]
 {¶ 35} We find that the trial court's finding that the best interests of the child would be served by granting permanent custody to the RCCSB was not against the manifest weight of the evidence. In conclusion, for the foregoing reasons, we find that the trial court's award of permanent custody to RCCSB was not against the manifest weight of the evidence.
 {¶ 36} Appellant's sole assignment of error is overruled.
 {¶ 37} Accordingly, the judgment of the Richland County Court of Common Pleas, Domestic Relations Division, Juvenile Branch, is affirmed.
By: Edwards, J., Gwin, P.J., and Wise, J. concur.
[1] In 1987, appellant suffered a significant work related brain trauma. Subsequently, she suffered another brain trauma in an automobile accident. In addition to the brain trauma injuries themselves, appellant has been diagnosed with dementia secondary to brain trauma and severe loss of intelligence, memory, and orientation secondary to the damage to her brain.
[2] The child is developmentally delayed, academically and socially. In addition, the child has been diagnosed as suffering from post traumatic stress disorder, chronic generalized anxiety disorder with separation anxiety features (provisional) and attention deficit hyperactivity disorder.
[3] The child had been out of appellant's care since February, 2000, a period of three years and the record indicates there were substantial periods of separation prior to February 2000.
[4] At the time of the CASA/GAL report, November 21, 2002, the foster parents were indecisive about adopting the child.